NOT DESIGNATED FOR PUBLICATION

Nos. 121,356
121,357
121,358
121,359

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of M.B., M.L.B., R.B., and B.B.,
Minor Children.

MEMORANDUM OPINION

Appeal from Butler District Court; DAVID A. RICKE, judge. Opinion filed December 13, 2019.
Affirmed.

*Chris J. Pate*, of Pate & Paugh, LLC, of Wichita, for appellant natural father.

*Cheryl M. Pierce*, assistant county attorney, for appellee.

*Stephany L. Hughes*, of Stephany L. Hughes, LLC, of El Dorado, guardian ad litem.

Before ATCHESON, P.J., BRUNS, J., and BURGESS, S.J.

PER CURIAM:  The natural father (Father) of M.B., M.L.B., R.B., and B.B. appeals
the ruling of the Butler County District Court terminating his parental rights to all four
children. Father contends the State failed to present sufficient evidence that he was an unfit
parent and that his unfitness is unlikely to change in the foreseeable future. Father also
claims the district court abused its discretion in determining that termination was in the
best interests of the children. We find no error in the district court's decision and affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

In July 2017, Mother gave birth to M.B., who tested positive for marijuana upon delivery. Mother disclosed that she had used marijuana throughout her pregnancy and had used methamphetamine two weeks before delivery. Mother also reported that Father had physically abused her. Mother and Father both later tested positive for amphetamine, methamphetamine, and marijuana.

The State filed a petition in the district court to have M.B. and her siblings B.B. (DOB: 2014), R.B. (DOB: 2015), and M.L.B. (DOB: 2016) declared children in need of care (CINC). The district court placed the children in the temporary custody of the Kansas Department for Children and Families (DCF). Father and Mother appeared at an adjudication hearing in November 2017, where they stipulated to the State's petition, and the district court adjudicated the children to be CINC. The district court ordered the children to remain in DCF custody subject to visitation with Father and Mother at the discretion of St. Francis Community Services (St. Francis). The district court also ordered the parents to complete case plan tasks designed to reintegrate the children with Father and Mother, which included participation in drug and alcohol treatment, gaining and maintaining employment, and paying monthly child support to DCF.

The parties appeared at review hearings in February and May 2018 where the district court ordered Father and Mother to continue following case plan tasks. By July 2018, the district court determined that reintegration was no longer a viable option, changed the goal of the case to adoption, and directed the State to move for termination of parental rights.

Thereafter, the State filed a motion to terminate Father's and Mother's parental rights. The district court later accepted Mother's relinquishment of her parental rights.

The district court held an evidentiary hearing on the termination of Father's parental rights in February 2019. The following evidence was presented.

- Mother testified that Father regularly used methamphetamine, cocaine, and marijuana around the children. Mother said that Father was often violent or angry as a result of his drug use and claimed that he raped, punched, shoved, and yelled at her in front of the children.

- When the children were taken into DCF custody, their hair follicles each tested positive for one or more illegal substances. As a result, DCF opened a physical abuse investigation. A child abuse pediatrician diagnosed the children with polysubstance exposure and child neglect/endangerment. The children also exhibited various health issues and developmental delays. The pediatrician testified that young children who are mobile are particularly vulnerable to drug exposure and that drug exposure can alter a child's brain chemistry and growth. According to the pediatrician, parents who use drugs are often unable to meet their children's needs. The pediatrician explained that due to a lack of parental supervision in an environment where parents use drugs, children are at risk for physical abuse, sexualized behaviors, and developmental delays.

- Father was given the opportunity to have supervised visits with the children beginning in August 2017. These visits continued until February 2018. By all accounts, the visits went well and the children appeared happy to see Father.

- After the children were placed in foster care, B.B. began acting out sexually and exhibited aggressive behaviors with R.B. and other children in the

3

foster homes. B.B. made several statements to a clinical therapist which suggested that Father had sexually abused B.B.

- Mother separated from Father in February 2018 because she believed that he was keeping her from getting the children back. Mother testified that Father was still using marijuana and methamphetamine daily, was not going to counseling or therapy, and had lost his job. Mother was also concerned that Father was sexually abusing B.B. Although Mother later recanted this allegation after getting back together with Father, DCF suspended Father's visitation with the children pending an investigation. Father's visitation had not yet resumed at the time of the termination hearing.

- Despite Father's inability to visit the children, St. Francis case workers encouraged Father to maintain his sobriety and follow through with the case plan tasks so that he could move forward after the investigation was complete. Father failed in this regard.

- Father's initial drug tests at the start of the case indicated high or constant use, and he continued to use illegal drugs after the children were removed from his home. From July 2017 to July 2018, Father never submitted a clean urinalysis (UA) or hair follicle test. Father submitted to 16 tests during this time, and they all tested positive for some combination of methamphetamine, cocaine, amphetamine, or marijuana. Father did not submit to testing on several other occasions. Most recently, Father's November 29, 2018 UA tested positive for THC and his hair follicles tested positive for methamphetamine and marijuana. After three attempts, Father did eventually complete a drug and alcohol evaluation, but he never successfully completed an outpatient drug and alcohol treatment program.

4

- Father completed a parenting class. Father completed a mental health assessment which recommended no further services. Father was required to complete a 12-week anger management/batterer intervention program. Father only completed a one-day class, claiming he did not know that he was required to complete a multi-week program.

- Father stopped communicating with St. Francis in July 2018, despite numerous attempts to reach him in person and by letter, telephone, and text.

- Father had intermittent employment during the pendency of the case and was not employed at the time of the termination hearing. Father's criminal history—which included felony convictions for forgery, aggravated battery, burglary, and theft—made it difficult for him to obtain and maintain employment. Father had paid child support to DCF but was not doing so at the time of the hearing because he was unemployed.

- Father was required to provide proof of stable housing to St. Francis. At the time of the termination hearing, St. Francis did not know where Father was living. Father testified that he was currently living in Oaklawn, a Wichita suburb, with a male friend. Father claimed that the home had adequate space for the children, but he would move out and get another home if he regained custody of the children. Father estimated that he could find another home within 60 days once he found a job. Father admitted that he had not informed St. Francis about his current living situation or contacted St. Francis to do a walk-through of the home.

- Several of Father's relatives testified that they had no concerns about the children's behavior or with Father's interactions with the children. Father's

relatives testified that as long as Father stayed clean, it would be best for Father to be in the children's lives.

- Father admitted that he and Mother argued but denied physically abusing her. Father denied that he had sexually abused B.B. or any of his children and also denied that B.B. had ever exhibited sexual behavior in his presence. Father admitted to his drug addiction and stated that he had last used marijuana a week before the termination hearing. Father testified that if he submitted to UA and hair follicle testing, he would test positive for marijuana and would "probably" test positive for methamphetamine. Father said that he had missed certain drug tests, had not sought drug treatment, and had stopped communicating with St. Francis because he was depressed after losing custody of the children and was frustrated after losing his visitation rights. Father expressed willingness to complete a drug treatment program and claimed that he had received no response after informing St. Francis that he needed inpatient treatment. Father testified that the "number one thing" he needed to address was depression because it was the cause of his drug usage.

After considering the evidence and oral argument from the parties, the district court took the case under advisement and later issued a written ruling terminating Father's parental rights. Ultimately, the district court found by clear and convincing evidence that Father was unfit by reason of conduct or condition which rendered him unable to properly care for the children and that the conduct or condition was unlikely to change in the foreseeable future. The district court also considered the physical, mental, and emotional health of the children, and determined that termination of Father's parental rights was in the children's best interests. Father filed this timely appeal.

We begin with some general principles governing proceedings under the Revised Code for Care of Children, K.S.A. 2018 Supp. 38-2201 et seq. A parent has a constitutionally protected liberty interest in the relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). Given the inherent importance and unique character of that relationship, the right has been deemed fundamental. *Santosky*, 455 U.S. at 753. Accordingly, the State may extinguish the legal bonds between parent and child only upon clear and convincing proof of parental unfitness. K.S.A. 2018 Supp. 38-2269(a); *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 1, 336 P.3d 903 (2014).

As provided in K.S.A. 2018 Supp.38-2269(a), the State must prove the parent to be unfit "by reason of conduct or condition" making him or her "unable to care properly for a child" and that the circumstances are "unlikely to change in the foreseeable future." The statute contains a nonexclusive list of 13 conditions that singularly or in combination would amount to unfitness. K.S.A. 2018 Supp. 38-2269(b), (c).

In reviewing a district court's determination of unfitness, an appellate court must be convinced, based on the full evidentiary record considered in a light favoring the State as the prevailing party, that a rational fact-finder could have found that decision "highly probable, *i.e.*, [supported] by clear and convincing evidence." *In re B.D.-Y.*, 286 Kan. at 705. The appellate court cannot weigh conflicting evidence, pass on the credibility of witnesses, or otherwise independently decide disputed questions of fact. 286 Kan. at 705. In short, any conflicts in evidence must be resolved to the State's benefit.

Having found unfitness, the district court must then decide whether termination of parental rights is "in the best interests of the child." K.S.A. 2018 Supp. 38-2269(g)(1). As

7

directed by the language of K.S.A. 2018 Supp. 38-2269(g)(1), the district court gives "primary consideration to the physical, mental and emotional health of the child." The district court makes that determination based on a preponderance of the evidence. See *In re R.S.*, 50 Kan. App. 2d at 1116. The best-interests issue is essentially entrusted to the district court acting within its sound judicial discretion. 50 Kan. App. 2d at 1115-16. An appellate court reviews those sorts of decisions for abuse of discretion. A district court exceeds that broad latitude if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013); *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011).

In the present case, the district court found seven statutory factors had established Father's unfitness:

- K.S.A. 2018 Supp. 38-2269(b)(1)—"Emotional illness, mental illness, mental deficiency or physical disability of the parent, of such duration or nature as to render the parent unable to care for the ongoing physical, mental and emotional needs of the child;"

- K.S.A. 2018 Supp. 38-2269(b)(3)—"the use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental or emotional needs of the child;"

- K.S.A. 2018 Supp. 38-2269(b)(4)—"physical, mental or emotional abuse or neglect or sexual abuse of a child;"

8

- K.S.A. 2018 Supp. 38-2269(b)(5)—"conviction of a felony and imprisonment;"

- K.S.A. 2018 Supp. 38-2269(b)(7)—"failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family;"

- K.S.A. 2018 Supp. 38-2269(b)(8)—"lack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child;" and

- K.S.A. 2018 Supp. 38-2269(b)(9)—"whether, as a result of the actions or inactions attributable to the parent and one or more of the factors listed in subsection (c) apply." Here, the district court found K.S.A. 2018 Supp. 38-2269(c)(3) applicable—"failure to carry out a reasonable plan approved by the court directed toward integration of the child into a parental home."

Father challenges the district court's findings under each factor, as well as the court's finding that his unfitness was unlikely to change in the foreseeable future.

*K.S.A. 2018 Supp. 38-2269(b)(1)*

In finding that Father was unfit under K.S.A. 2018 Supp. 38-2269(b)(1), the district court held: "While not officially diagnosed, the court finds that [Father] acknowledges that he does suffer from a degree of mental and/or emotional illness. If unchecked, this illness would interfere with his abilities to effectively parent."

Father argues that in finding unfitness under this factor, the district court erred in giving more weight to Father's self-diagnosed depression than the fact that he was never ordered to participate in mental health treatment as part of his case plan.

9

Father testified that he had been struggling with depression after losing custody of the children and that his depression had increased after losing his visitation rights. Father specifically testified that he needed to address his depression because it was the cause of his substance abuse issues. Although Father did complete a mental health assessment, it did not recommend the need for any mental health services, Father admitted that he had completed the assessment before losing his visitation rights and that he was not struggling with depression as much at the time of the assessment.

*K.S.A. 2018 Supp. 38-2269(b)(3)*

In finding that Father was unfit under K.S.A. 2018 Supp. 38-2269(b)(3), the district court found that Father

> "has used the dangerous drugs of marijuana, methamphetamine, and cocaine his entire adult life, and that the long duration of his drug use and the nature of the polysubstance abuse render the father unable to care for the physical, mental, or emotional needs of any of his children. Further, his possession and use of these controlled substances has exposed his children to these addictive and harmful drugs; they too were positive for multiple controlled substances upon being taken into custody. His own impairment, coupled with the exposure of his children to harmful substances, renders him unable and unfit to parent them."

Father acknowledges his struggle with drug addiction, but argues that the State failed to establish that his drug use rendered him unable to care for the physical, mental, or emotional needs of the children. Father claims that the district court ignored evidence which showed that he was an effective parent and that his visits with the children were positive.

The evidence before the court established that Father was a daily user of controlled substances, and that he had exposed the children to the effects of the illegal

10

drugs he was ingesting. The evidence also suggested that Father became angry and violent after using drugs. Even after the children were removed from Father's custody, his drug use remained constant, as evidenced by the fact that he tested positive for one or more controlled substances each time he submitted to drug testing during this entire case. Father even admitted that he would test positive for marijuana and would probably test positive for methamphetamine on the day of the termination hearing. The district court also heard testimony about the harmful effects of drug exposure on children and the risks to children of living in an environment where they are exposed to drugs and drug use.

*K.S.A. 2018 Supp. 38-2269(b)(4)*

The district court found that despite evidence of B.B.'s sexualized behavior, the evidence was insufficient to conclusively determine that Father had sexually abused B.B. or any other child. The court did find, however, that the evidence supported a finding that Father and Mother "constantly and consistently exposed all four children to the chemical effects of dangerous controlled substances, and that such polysubstance exposure constituted child neglect and endangerment."

Father appears to concede that this factor weighs in favor of unfitness by acknowledging his long-term addiction to drugs, only challenging the district court's finding under this factor that his unfitness in this regard would be unlikely to change in the foreseeable future.

*K.S.A. 2018 Supp. 38-2269(b)(5)*

In finding that Father was unfit under K.S.A. 2018 Supp. 38-2269(b)(5), the district court noted that Father had been convicted of six felonies that involved dishonesty and violence, including forgery, burglary, theft, and aggravated battery. The district court concluded:

11

"Even though the evidence in this case does not indicate that the felony convictions themselves have <u>directly</u> interfered with [Father]'s ability to parent, the convictions indicate a pattern of criminal behaviors over a period of 10 years which are separate and distinct from all of his ongoing illegal drug possession and use. Analysis of this factor, quite obviously, does not cast favorable light upon [Father] as an appropriate parental figure."

Father argues that the district court's reliance on this factor was improper, as his most recent felony conviction was in 2009, he was not incarcerated during the pendency of the present case, and the convictions did not interfere with his ability to parent.

Although Father's convictions may not have directly affected his ability to parent the children, Father testified that he had a difficult time obtaining and maintaining employment due to his criminal record. Father's inability to maintain employment very clearly reflects on his ability to provide a stable, suitable home for the children.

*K.S.A. 2018 Supp. 38-2269(b)(7)*

The district court found that DCF, through St. Francis, formulated a case plan designed to facilitate the goal of reintegration with Father and Mother. The court found that despite St. Francis' reasonable efforts to rehabilitate the family, those efforts failed due to Father's failure to "diligently pursue the reintegration tasks that were made known to him."

Father argues that the agencies' efforts were not reasonable because he was prohibited from having contact with the children after his visitation was suspended in February 2018 pending the outcome of the sexual abuse investigation. Father concedes that he did not complete all of his remaining case plan tasks, but claims that even if he had been fully compliant he still would not have been able to see his children, which is a critical element of reintegration.

12

The language in K.S.A. 2018 Supp. 38-2269(b)(7) imposes an obligation upon the relevant social service agencies to expend reasonable efforts toward reintegrating the child with his or her parents. To that end, the social service agencies should attempt to help the parent accomplish case objectives designed to correct the parent's conduct or condition that caused removal of the child from the home. Contrary to Father's claim, the record is replete with examples of St. Francis' reintegration efforts and management of Father's case plan tasks, which included assisting with visitation, scheduling appointments with different agencies, paying for intakes and evaluations, and monitoring Father. Although Father lost the ability to visit the children in February 2018, the evidence shows that he made no substantial progress on the case plan tasks at any time before he lost his visitation rights. After Father could no longer visit the children, St. Francis encouraged him to maintain his sobriety and follow through with the other case plan tasks so that he could move forward after the investigation was complete. Father failed to do so and stopped communicating with St. Francis in July 2018. Thereafter, St. Francis continued its attempts to maintain contact with Father. The mere fact that St. Francis could not facilitate visits with the children during the sexual abuse investigation does not negate the numerous and reasonable efforts that were made for Father. Any claim that DCF or St. Francis failed to make reasonable efforts to reintegrate Father and the children is contradicted by the record.

*K.S.A. 2018 Supp. 38-2269(b)(8) and (b)(9)*

In finding that Father was unfit under K.S.A. 2018 Supp. 38-2269(b)(8) and (b)(9), the district court found that although Father had made some efforts to work toward reintegration, he had failed to make adjustments and changes in certain critical areas. The court found Father's failure to address his substance abuse problems was the most concerning: "[Father]'s continuous, even daily use of marijuana while occasionally mixing in cocaine and/or methamphetamine demonstrates an inability and failure to make

13

the one fundamental change that absolutely <u>must</u> be made: to stop the pervasive influence of drug abuse in the lives of [Father] and his children."

Father argues that the district court's reliance on these factors was improper because he did complete certain case plan tasks and because visitation reports had all been positive up until February 2018. Father reasserts his claim that it was impossible to have a reasonable reintegration plan when he was prohibited from having contact with the children. Father alleges that he was in a hopeless situation because he would not be able to see his children regardless of the efforts he made on other case plan tasks.

Notably, the district court's decision to terminate was not based on Father's lack of visitation with the children but instead was based primarily on Father's continued drug use. In addition to Father's complete inability to stop using drugs, he also failed to complete certain case plan tasks that did not depend on his ability to visit the children. Namely, Father failed to complete the multi-week batterer intervention program, failed to provide St. Francis with proof of employment and proof of stable housing, failed to appear for multiple drug tests, and stopped communicating with St. Francis.

The district court made findings supported by clear and convincing evidence on several statutory factors which may be considered in determining unfitness. Any number of them standing alone could serve as a basis for a finding of unfitness. K.S.A. 2018 Supp. 38-2269(f). Looking at the district court's findings in total, the evidence of unfitness was overwhelming. We conclude a rational fact-finder could determine to a high probability that Father was unfit to parent the children at the time of the termination hearing in all the ways identified by the district court under K.S.A. 2018 Supp. 38-2269(b)(1), (b)(3), (b)(4), (b)(5), (b)(7), (b)(8), and (b)(9).

Likewise, we find support for the district court's determination that Father's unfitness was unlikely to change in the foreseeable future. A district court may look to a

14

parent's past conduct as an indicator of future behavior. See *In re Price*, 7 Kan. App. 2d 477, 483, 644 P.2d 467 (1982); *In re M.T.S.*, No. 112,776, 2015 WL 2343435, at *8 (Kan. App. 2015) (unpublished opinion). To that end, the district court found:

> "[Father] has made some efforts to comply with the case plan tasks designed to facilitate reintegration with a parent, but his never-ending use of controlled substances such as marijuana, methamphetamine, and cocaine have substantially interfered with those efforts. Father's unwillingness, or inability, to separate himself from drug use and its harmful effects on a family unit indicates that he simply will not be able to adjust his circumstances to adequately meet his children's needs. Given his failure to complete a treatment program, coupled with his chronic and apparently unstoppable drug usage during the 18 months that these CINC cases have been pending, there is no reason for the court to believe that the father's situation will significantly improve in the foreseeable future."

Father claims that his previous drug use does not establish that he would expose the children to drugs in the foreseeable future. We examine the "foreseeable future" from the perspective of a child. K.S.A. 2018 Supp. 38-2201(b)(4); *In re M.H.*, 50 Kan. App. 2d 1162, 1170, 337 P.3d 711 (2014). Children and adults have different perceptions of time, and a child has the right to permanency within a time frame that is reasonable to them. 50 Kan. App. 2d at 1170; see *In re G.A.Y.*, No. 109,605, 2013 WL 5507639, at *1 (Kan. App. 2013) (unpublished opinion) ("'child time'" differs from "'adult time'" in care proceedings "in the sense that a year . . . reflects a much longer portion of a minor's life than an adult's"). At the time of the hearing, B.B. was almost 5 years old, R.B. was almost 4 years old, M.L.B. was 3 years old, and M.B. was 19 months old. The case had been ongoing for more than 18 months, a significant portion of each child's life. We agree with the district court's decision declining Father's request for additional time to work toward reintegration.

Finally, we consider the district court's finding that the children's best interests would be served by terminating Father's parental rights. The district court is in the best position to make findings on the best interests of the child, and we will not disturb its judgment unless we find the determination amounts to an abuse of judicial discretion. *In re K.P.*, 44 Kan. App. 2d 316, 322, 235 P.3d 1255 (2010). Father argues that in making its best interests finding, the district court focused only on Father's past and recent drug use. Father claims the court failed to give adequate weight to his bond with the children, the "hopeless situation" he was in after visitation was suspended, and evidence that he was working toward reintegration by seeking employment and suitable housing for the children and was willing to complete inpatient drug treatment.

We are not persuaded by Father's arguments. Instead, we are convinced that the district court evaluated all the testimony and evidence before determining that it is in the children's best interests that Father's parental rights are terminated. In reaching this conclusion, the district court noted that the case had been pending for more than 18 months and that the children deserved to be in a stable and drug-free environment. A reasonable person could have found the same and concluded that termination was in the best interests of the children.

We are convinced that a rational fact-finder would have found it highly probable that Father is unfit and that his unfitness is unlikely to change in the foreseeable future. The district court did not abuse its discretion in finding that termination of Father's parental rights is in the children's best interests.

Affirmed.

\* \* \*

ATCHESON, J., concurring:  I concur in affirming the district court's decision to terminate the legal right of Father to parent his four children. The evidence amply

16

demonstrated Father's unfitness under several of the grounds identified in K.S.A. 2018 Supp. 38-2269(b), particularly based on Father's intractable addiction to illegal drugs. Father also failed to secure adequate housing and had, at best, a spotty employment history—material obstacles to raising children often directly linked to a parent's unchecked substance abuse. Here, those circumstances, coupled with the unsuccessful efforts of the assigned social service agencies to reintegrate the family, rendered Father unfit under K.S.A. 2018 Supp. 38-2269(b)(3) (continuing use of dangerous drugs); K.S.A. 2018 Supp. 38-2269(b)(7) (failure of reasonable agency plans for family rehabilitation); and K.S.A. 2018 Supp. 38-2269(b)(8) (lack of effort of parent to adjust circumstances to meet children's needs). The district court so found, and any one of those findings would be sufficient to support unfitness. I agree the evidence justified the district court's determination that Father's unfitness on those grounds was unlikely to change in the foreseeable future. Likewise, under the circumstances, the district court did not abuse its discretion in concluding the best interests of the children favored termination of Father's rights. See K.S.A. 2018 Supp. 38-2269(a) (unfitness unlikely to change), (g)(1) (best interests).

Although the district court discussed other statutory bases for termination under K.S.A. 2018 Supp. 38-2269(b) and outlined evidence bearing on them in its detailed written ruling, I don't read the decision as finding Father legally unfit for those reasons. The evidence rightfully gave the district court pause. But the district court did not rest its legal conclusion on those grounds. As I have said, the reasons the district court did rely on were well supported in the record and more than legally adequate to terminate Father's parental rights.

17